WILLIAM M. ALBERTI, Appellant, *v.* OTTO HEINEMAN, Respondent.

First Department, May 2, 1919.

Principal and agent — contract by managing director of corporation authorizing another to make an agreement with attorneys for fees — contract binding although principal did not have knowledge of details — evidence establishing primary liability of said managing director.

Upon the declaration of war between Germany and the United States a director of the agent of a German corporation notified a lawyer that neither he nor his company would be responsible for any further fees in pending patent litigation. But the managing director of the German corporation, upon leaving for the west, being anxious to have the patent litigation continue, told said lawyer that the patent expert of the German corporation would make arrangements with him about his fees, and said

expert, after offering a guaranty by the managing director which was refused, agreed that said director should be primarily liable for the fees, which were fixed. Thereafter said lawyer wrote to the patent expert stating that his fees and the fees of a patent lawyer engaged by him would be the amount fixed. In an action against the managing director to enforce his liability for the fees the patent expert corroborated the lawyer to the effect that the latter was unwilling to take the defendant's guaranty but wanted a primary liability, and it appeared that payments had been made by defendant's personal checks and that he had written the lawyer that the patent expert may have made some arrangements but he did not know anything about them.

*Held,* on all the evidence, that a judgment in plaintiff's favor should be reinstated.

Since the defendant had authorized the patent expert to make the contract for services it was binding upon him although he had no knowledge of the details.

APPEAL by the plaintiff, William M. Alberti, from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on the 7th day of February, 1918, setting aside the verdict of a jury in plaintiff's favor and dismissing the complaint on the merits upon a reserved motion made before the case was submitted to the jury, and also from the judgment in defendant's favor entered in said clerk's office on the same day pursuant to said order.

*George P. Breckenridge* of counsel [*Cabell & Breckenridge,* attorneys], for the appellant.

*Jacob Schechter* of counsel [*Mortimer Lanzit* with him on the brief; *Schechter & Lotsch,* attorneys], for the respondent.

SMITH, J.:

The American Parlograph Company had some patent litigation. A lawyer by the name of Cabell was a friend of one of the directors of that company named Neracher, and was asked to take charge of the litigation. Through him a patent lawyer by the name of Benjamin was engaged. The American Parlograph Corporation was the agent in the United States of the Carl Lindstrom Corporation in Germany for the selling of dictating machines. The defendant Heineman was managing director of the German corporation. After war was declared between Germany and the United

States, the Parlograph Company could get no dictating machines from Germany, and, therefore, the director Neracher, who was the friend of Cabell, notified him that neither he nor his company would be responsible for any further fees. Heineman, however, was in this country the managing director of the Carl Lindstrom Company, and he was anxious that the patent litigation should be continued. Cabell said to him that he had been notified that he could not look to the Parlograph Company, nor to Neracher, the director of that company, and that he was unwilling to look to the German company, and wanted some direct liability for his services. He had not then talked to Benjamin to know what Benjamin's price would be. The defendant was leaving for the west and told Cabell that one Carl Goldstein, who was the patent expert of the Carl Lindstrom Company, would make arrangements with him about his fees. Cabell afterwards saw Goldstein and Goldstein offered him first a guaranty of the defendant. This Cabell refused to take, because he did not want to have to first follow the German company, as he said. It was afterwards agreed, however, that this defendant should be primarily liable for the fees, and those fees were fixed between Cabell and Goldstein at $5,000, with $1,500 to be paid at the start. Cabell, upon February tenth, wrote to Goldstein stating that his fees and Mr. Benjamin's would be $5,000 and that the $1,500 was to be paid at the start. That letter said nothing about the personal liability of the defendant Heineman. Goldstein was called as a witness for the plaintiff. He had been under the employ of the defendant, and was claimed by the plaintiff to be an unwilling witness. However, his evidence clearly corroborates Cabell to the effect that Cabell was unwilling to take Heineman's guaranty, but wanted some primary liability in this country. He swears that Cabell even wanted the money deposited here.

I have said that Cabell and Goldstein agreed at this conference upon the arrangement. That is not entirely accurate. At this first conference Goldstein did not accept the proposition, but took it with a view of consulting Mr. Heineman. Afterwards Mr. Goldstein had consulted Mr. Heineman and he stated explicitly that he had notified defendant of the arrangement and to go on with the work.

We have, therefore, the position of Cabell representing his own firm and Benjamin, that they were unwilling even to take Heineman's guaranty, but wanted a primary liability by Heineman. We have the fact that Heineman left for the west, telling Cabell that Goldstein would make the arrangement with him. This gave to Goldstein full authority to make this contract. We have the testimony of Goldstein corroborative of the testimony of Cabell as to the contract made. It matters not, therefore, whether or not the defendant had knowledge of the details of the contract as made. With authority of Goldstein to make the contract, the contract as made was binding upon him.

The acts and evidence of Heineman himself are to an extent corroborative of Cabell's testimony. In the first place the first three checks were defendant's personal checks, as he himself swears. Thereafter, another $1,000 was paid in two $500 checks which were defendant's personal checks. Furthermore, in defendant's Exhibit A, Heineman writes to Cabell: " It may be that Mr. Goldstein has made some arrangements, but I do not know anything about it." This I take it to be a recognition of Goldstein's authority to make arrangements as to these fees which had not been reported, as Heineman says, to him. These attorneys proceeded to complete their work. They defended attacks upon their patents successfully and now Heineman refuses to pay them the balance of their compensation.

In my opinion the case against the defendant was clearly proven and the judgment and order should be reversed, with costs, and the verdict reinstated. The plaintiff is suing as assignee of Cabell and Gilpin and Benjamin.

CLARKE, P. J., LAUGHLIN, SHEARN and MERRELL, JJ., concurred.

Judgment and order reversed, with costs, and the verdict reinstated.